**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **PENNY JACOBSON-BOETTCHER,** ) | |
| **In her Individual Capacity;** ) | **CASE NO.** |
| . ) | **COMPLAINT FOR** |
| **V.** ) | **VIOLATION OF CIVIL RIGHTS** |
| ) | **(42 U.S.C. § 1983)** |
| **SERGEANT WILLIAM DOWDY, in his** ) | |
| **Individual Capacity, DEPUTY JACOB** ) | |
| **WALKER, in his Individual Capacity, HARRIS** ) | |
| **COUNTY, TEXAS and DOES 1-10, Inclusive.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| _Defendants._ ) | |
| _____ ) | |

Plaintiff  PENNY JACOBSON-BOETTCHER,  for her Complaint against the above-named  Defendants, respectfully states and alleges as follows:

## JURISDICTION

1.     Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiff under the Constitution of the United States, including the Fourth, Ninth, and Fourteenth Amendments of the U.S. Constitution.

2.      Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. Section 1983.  Jurisdiction is also conferred by 28 U.S.C. Section

1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

3.      Venue is properly established in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of Katy, Harris County, Texas, and all of the Defendants were either employed in or are residents of Harris County in the State of Texas where jurisdiction is the United States District Court for the Southern District of Texas, Houston Division in Houston, Texas.

## PARTIES

4.  At all times relevant to the facts and circumstances in the Complaint, Plaintiff Penny Jacobson-Boettcher (hereinafter referred to as "PENNY") was a resident of the City of Katy, Harris County, Texas.

5.  At all times relevant to the facts and circumstances in the Complaint, Defendant HARRIS COUNTY (hereinafter referred to as "HARRIS") is a governmental entity, duly organized and existing under the laws of the State of Texas. At all times herein, the Harris County Sheriff Department (hereinafter referred to as "SHERIFF") was the law enforcement arm of Harris County and under the administrative and operational control of Harris County.

6.  At all times mentioned herein, Defendant SERGEANT WILLIAM DOWDY (hereinafter referred to as "DOWDY") was an individual residing, on information

and belief, in Harris County, Texas and was an officer, agent, and or employee of the Harris County Sheriff Department, Houston, Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the wrongful seizure and excessive use of force against PENNY and contributed to the fabrication and filing of a false incident report.

7.   At all times mentioned herein, Defendant DEPUTY JACOB WALKER (hereinafter referred to as "WALKER") was an individual residing, on information and belief, in Harris County, Texas and was an officer, agent, and or employee of the Harris County Sheriff Department, Houston, Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the wrongful seizure and excessive use of force against PENNY and the fabrication and filing of a false incident report.

8.   DOES 1-10, inclusive, are individuals residing in Harris County, Texas and who was an officer, agent, and/or employee of the Harris County Sheriff Department whose acts as alleged herein were performed solely in their individual capacity and/or under color of state law and were responsible in some manner for the damages incurred by PENNY.

9.   Plaintiff is ignorant of the true names and capacities of defendant DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is

informed and believes and thereon alleges that each defendant so named is responsible

in some manner for the injuries and damages suffered by plaintiff as set forth herein.

Plaintiff will amend her Complaint to state the true names and capacities of defendants

DOES 1 through 10, inclusive, when they have been ascertained.

10. In engaging in the conduct described herein, DOWDY and WALKER acted in

their individual capacities and/or under color of law while engaging in the conduct

described herein.

11. Plaintiff is informed and believes, and on such basis alleges, that each of the

named Defendants was and is the agent, employee, principal, employer and/or co-

conspirator of each of the remaining Defendants and/or vice versa.  In addition, Plaintiff

is informed and believes, and on such basis alleges, that the Defendants named

hereinabove, and each of them, are responsible in some manner for the occurrences herein

alleged, and that each of the above-named Defendants conspired with, and/or sided and/or

abetted and/or jointly collaborated with each of the remaining Defendants and identified

persons in committing the acts herein alleged.

12. Plaintiff is informed and believes, and on such basis alleges, that each of the above

named Defendants and settling co-conspirators were acting under the color of state law in

committing the acts herein alleged, and that in doing the things herein alleged Defendants,

and each of them, were acting within the course and scope of their duties as employees or

agents of each other.

13. Plaintiff is informed and believes and on such basis alleges that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their Co-Defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants and identified persons agreed upon, approved, ratified, and/or conspired together to commit all of the acts and/or omissions alleged in this Complaint.

## FACTUAL ALLEGATIONS

14. On Saturday, October 22, 2016 PENNY and her husband, Isaiah Boettcher, hereinafter referred to as ISAIAH attended a wedding at Holy Rosary Catholic Church in Rosenberg, TX. The wedding began at 2 PM and both PENNY and ISAIAH left at approximately 7 PM.  On the way home, PENNY and ISAIAH stopped by a corner store on FM 723 for a Diet Coke and headed to MO's PLACE located at 21940 Kingsland Blvd., Katy, TX 77450. PENNY and ISAIAH arrived at MO's PLACE at approximately 7:30 PM, entered, paid the cover charge, said hello to Mohammad Jeloudarzadeh, Jr. (hereinafter referred to as "MO, JR.")  who was the bartender/manager on duty and also the son of the owner, and ordered two drinks.

MO, JR. came from around the bar to give PENNY and ISAIAH a hug. PENNY and ISAIAH had not patronaged MO's PLACE for approximately 9 months or so, but over the course of 10+ years had made great friends at MO's PLACE including MO, JR.

15. PENNY and ISAIAH quickly found a table and sat down. They remained at the same table for the duration of their stay until the end of the night. PENNY's foot condition prevented her from walking, dancing and standing for prolonged periods. Towards the end of the night, they decided to get closer to the dance floor and watch the dancing before they left. At approximately 1:00 AM on Sunday, October 23, 2016, while walking toward the dance floor, PENNY accidentally bumped a woman due to her foot condition. The woman was approximately 30 years old, had on a pink shirt and had brown hair. This bump would be expected at MO's PLACE where there is dancing and patrons moving around the facility and caused no damage or injury. PENNY turned around to apologize, but the woman screamed "get away from me" while throwing her hands up in a bizarre manner. PENNY attempted to apologize to her and her companion but the woman PENNY bumped went to get a staff member to complain. A staff member came up behind PENNY and told PENNY it was time to go. PENNY responded and also questioned him as to why, stating that PENNY did nothing wrong. The staff member went to get one of the Harris County off-duty deputies that worked for MO's PLACE as a second job. The off-duty uniformed sheriff's deputy MOOK then told PENNY and ISAIAH to leave the premises which

both PENNY and ISAIAH immediately complied.

16.  Both PENNY and ISAIAH exited MO's PLACE peacefully, although PENNY was upset that this situation had even occurred. PENNY expressed her feelings to Deputy MOOK, hereinafter referred to as "MOOK" about her disappointment and lack of understanding of why this occurred when another off-duty uniformed officer with a cowboy hat on, SERGEANT DOWDY exited the bar with a male patron that was handcuffed allegedly for fighting and being intoxicated. The patron began to urinate on himself and this angered DOWDY, who responded by throwing the patron on the ground and putting his knee in the patron's back. As this occurred DOWDY heard the conversation PENNY was having with MOOK. At that time, PENNY was approximately 7 feet from the front door of MO's PLACE. During this time, MO, JR. came out to have ISAIAH sign the tab. Then both PENNY and ISAIAH proceeded to exit the premises.

17. ISAIAH asked the valet if PENNY could wait with him while ISAIAH went to go get their truck. The valet said fine since PENNY could not walk that far due to her foot condition.  PENNY was then standing approximately 12 feet away from the front doors, off to the side of the canopy by the yellow pole with the valet. ISAIAH pulled up with the truck and PENNY walked over to the truck. DOWDY then yelled at PENNY saying **"get in the truck or you're going to jail"** to which PENNY responded "but why, I didn't do anything wrong". DOWDY then stated "**that's it,**

you're going to jail".

18.  DOWDY approached PENNY and instructed her to put her hands behind her back, which PENNY complied. **DOWDY arrested PENNY in violation of her 4th amendment rights without probable cause.** When DOWDY applied the handcuffs, PENNY complained they were too tight and informed DOWDY that she had Rheumatoid Arthritis. At that time DOWDY asked ISAIAH "what is she doing drinking and in a bar with rheumatoid". PENNY then told her husband not to say a word in an attempt to avoid a confrontation. DOWDY became angry, did not loosen the cuffs but applied more pressure to her wrists by pushing downward on the cuffs. The valet parked the truck for ISAIAH so ISAIAH could stay with PENNY.

19. DOWDY phoned for a patrol unit. While standing, PENNY had to shift her weight from left to right due to the condition of her feet. This angered DOWDY, to which DOWDY responded by walking PENNY back towards the glass exterior beside the taco vendor at MO's PLACE and bent PENNY over the trash can. DOWDY had his left hand on the hand cuffs and his right arm across the back of PENNY'S neck.  ISAIAH asked DOWDY to "please don't do her that way, she has neck issues" to which DOWDY (while looking directly at ISAIAH) slightly lifted his arm then reapplied it, this time with more pressure. The force caused the trash can lid to come off and PENNY was knocked to the ground. PENNY lost consciousness briefly and her shoulder was injured.  PENNY was on the ground for approximately

8

2 minutes face down to the ground.

20. PENNY awoke and then about a minute later two voices were telling her to get up. PENNY responded "I can't get up like this. The two voices were DOWDY and WALKER. PENNY stated "I have Rheumatoid Arthritis and my feet are raw". Again, they restated to PENNY to get up and PENNY responded the same. This seemed to further anger the DOWDY and WALKER, who decided to get PENNY up by pulling her by the handcuffs upward. PENNY screamed the entire time in pain. Once upon her feet, PENNY found balance for a quick second, and PENNY began walking towards the patrol unit. DOWDY stepped on her right foot causing PENNY's shoe to come off and caused her to wobble. Both DOWDY and WALKER were walking very quickly and PENNY was having difficulty walking due to her foot condition, without her shoe, and a raw foot. PENNY continued to scream from the increasing pain which felt like shards of glass ramming into her feet. PENNY told the officer's "I can't walk that fast" amongst her many screams and tears.

21. PENNY was then pushed forward by either Deputy WALKER or DOWDY. PENNY hit the ground with her head. ISAIAH asked the deputies "what happened" to wit DOWDY responded "she dead legged". Both WALKER and DOWDY pulled PENNY to a sitting upright position, with her legs off to the left side of her body. Both DOWDY and WALKER again, tried to get PENNY to stand by pulling on the handcuffs knowing of her fragile physical condition. PENNY told them "I can't get

COMPLAINT

up that way". After multiple attempts with the handcuffs, WALKER then got behind

PENNY, put his arms under her arms, yanked her up to her feet BUT didn't let her

get footing and quickly dragged PENNY backwards. PENNY, was screaming in

pain, her head was bleeding; her knees and her feet were bleeding. PENNY was in

extreme pain. PENNY then said to WALKER "just shoot me now, if you're going to

continue to torture me. I can't take any more pain." Both DOWDY and WALKER

made statements angerly that they were having to deal with PENNY when they could

be in on a fight that had erupted in the parking lot.

22.   PENNY was placed in the car. While on her back - the pain from the events

caused her to vomit. PENNY began to choke so she rolled towards her left so she

wouldn't choke. PENNY vomited two more times in the car. PENNY was terrified.

PENNY screamed HELP multiple times. WALKER then yanked PENNY out of the

car via the handcuffs and asked ISAIAH to come and console PENNY which he did.

PENNY sat in the car and then heard a voice say "does anyone have ID on her" to

which PENNY called out her driver's license number. At that time, DOWDY and

WALKER  were trying to decide what to charge PENNY with to justify their

outrageous behavior. SERGEANT CAMPBELL (hereinafter referred to as

"CAMPBELL"),  arrived on the scene and one of the deputies told him that PENNY

was going to jail and CAMPBELL said "she's not going to jail, she's going to the

hospital" (PENNY was bloody from head to toe). PENNY was asked if she wanted

to go to the hospital and she said "yes". PENNY was put on a stretcher and then put into the ambulance.

23. As a result of the actions of DOWDY and WALKER, PENNY suffered bruises, a black eye, recurring headaches, lacerations (permanent scar above right eye and right wrist), abrasions, nerve "crush" injury on right wrist, neck pain, memory loss, arm stiffness, tendonitis, scabs, inflammation in joints, pustular psoriasis flare, rheumatoid arthritis flare, fibromyalgia flare, nightmares, PTSD, stress, fear, emotional damage, depression and insomnia. PENNY was never charged with any violation of any law.

24. Officer WALKER in his incident report "**fabricated**" the sequence of events to avoid future liability for his actions and the actions of DOWDY.  A true and correct copy of the "Incident Report" with intentional fabrications is attached at **Exhibit A** and incorporated by reference.

25. DOWDY and WALKER had no probable cause to arrest PENNY and to use excessive force on PENNY while she was waiting for her husband, ISAIAH to bring the car so they could go home. **PENNY was never charged with any offense after the beating by the defendant officers.**

/     /     /

/     /     /

### FIRST CAUSE OF ACTION

### (42 U.S.C.  Section 1983)

### (4th and 14th Amendment)

### (Against named defendants DOWDY AND WALKER and

### DOES 1-10, inclusive)

26. Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 25 of this Complaint.

27.  In doing the acts complained of herein, officers DOWDY AND WALKER, and DOES 1-10, inclusive, acted under color of law to deprive Plaintiff PENNY of certain constitutionally protected rights including, but not limited to:

a.      The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth amendment to the United States Constitution;

b.      The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourth and Fourteenth amendments to the United States Constitution;

c.      The right to equal protection of the laws, as guaranteed by the Fourteenth amendment to the United States Constitution;

d.       The right not to have excessive force against her in violation of her 14th amendment rights.

e.      The right to be free from interferences with the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution.

WHEREFORE, plaintiff prays for relief as hereinafter set forth below.

## SECOND CAUSE OF ACTION

### (42 U.S.C.  Section 1983)

### (Against defendant HARRIS COUNTY, TEXAS)
### (Monell Related Claims)

28.     Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 27 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by Defendants DOWDY and WALKER, and any and all allegations requesting punitive damages.

29.   Defendant Harris County, Texas, including through its Sheriff's Department, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Individual Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of the rights of Plaintiff.

30.   Defendant Harris County, Texas, including through its entity the Harris County Sheriff's Department, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff  at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourth, Ninth, and Fourteenth Amendments, to include without limitation, the protection of the right to be free from unlawful search and seizures and excessive force

applied by its deputies.

31.   Defendant Harris County also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, officers, employees and those acting under them, including within its Sheriff's Department so as to protect these Constitutional Rights; and to refrain from acting with deliberate indifference to the Constitutional Rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

32.   Moreover, based on the duties charged to Defendant Harris County, Texas and its policymaking officials, knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of citizens with whom their Sheriff's Department regularly came into contact.

33.   **Harris County, Texas has no policies in force to ensure its officers do not violate the constitutional rights of individuals when they are working a 2nd job in uniform and under color of state law.  A true and correct copy of their policies and procedures are attached and Exhibit B and incorporated by reference as though fully pled herein.** There have been numerous instances where rights have been violated by deputies of the Sheriff's Department.

34.   Harris County, Texas established, adopted, followed, and implemented or turned a blind eye to customs and practices which were followed, complied with, and

carried out by its Sheriff's Department when the rights of the Plaintiff were violated as stated above.

35.     At the time of the underlying events, the regularly established customs and practices of the Harris County Sheriff Department that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of the Plaintiff's rights as follows but are not limited to: (a) the unlawful detention of citizens and (b) Excessive Use of Force; (c) The unwritten policy of acting with deliberate indifference to the rights of citizens whose rights were violated by its Sheriff's department failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the Fourth, Ninth, and Fourteenth Amendments. (d) the consistent failure by Harris County to investigate violations of constitutional rights by its sergeants and deputy sheriffs, and consistent failure to discipline its sergeants and deputy sheriffs and their supervisors involved in constitutional violations of citizens and (e ) hiring officers without a full investigation.

36.     Harris County is aware that its sheriff's sergeants and deputies regular engage in the conduct Plaintiff complains of.

37.     Nevertheless, Harris County has made a knowing and conscious decision to refrain from promulgating policies to prevent such misconduct, and has consistently and knowingly failed to provide any training to members of its Sheriff's Department with respect to Plaintiff's complaint.

38.     Harris County's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above — the known need for a specific policy prohibiting its officers from violating citizens constitutional rights — is itself a "policy" decision which constitutes a policy of deliberate indifference.

39.     This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff's harm, in that the members of the Sheriff's Department both followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures when they stopped, arrested, and with excessive force injured PENNY.

40.     None of the constitutional violations complained of and set forth above would have happened if Defendant Harris County honored its obligation to promulgate policies and train its sergeants and sheriff's deputies of the crucial constitutional prescriptions which govern their daily work.

41.     These policies, customs, and practices that disregard the constitutional protections afforded to the most vulnerable citizens was a substantial factor in causing harm to the Plaintiff.

42.     The state of the law regarding the constitutional protections afforded to PENNY by the Fourth, Ninth, and Fourteenth Amendments was clearly established well before the time PENNY'S constitutional rights were violated.

43.     Harris County's deliberate failure to train its sergeants and deputies on these established constitutional protections was a substantial factor in causing the Plaintiff's harm.

44.     Plaintiff is further informed and believes that, Harris County never investigates or disciplines its officers for continual violations of citizens' constitutional rights. Plaintiff believes that the violation of PENNY's rights was not an isolated incident specific to PENNY's circumstances but are regular and continuing and are daily perpetrated by its officers.

45.     The conduct described herein is so pervasive that it has become common knowledge that the type of misconduct alleged herein is rampant within its Sheriff's Department to such an extent that Harris County can be said to be deliberately indifferent to the need to promulgate policies and provide training to rein-in its officers, and prevent the type of misconduct alleged herein.

46.   These actions and inactions of Defendant Harris County were the moving force behind, and direct and proximate cause of PENNY's injuries and as a result have sustained general and special damages, to an extent and in an amount to be proven separately.

47. Defendant HARRIS COUNTY through the supervisors in its sheriff's department have failed to adequately train defendant sheriff's DOWDY and WALKER, and DOES 1-10 in the proper use of force; proper detentions and arrests;

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (JUDICIAL DECEPTION/ SUBSTANTIVE DUE PROCESS)
### (14th Amendment)
### (Against named defendant  WALKER )

48.   Plaintiff realleges and incorporates by reference herein paragraphs 1 through 25 of this Complaint.

49.   Plaintiff is informed and believes and thereon alleges that at all times relevant herein, there existed a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that a reasonable agent in Defendant's situation would know, or should know, that it is unlawful to lie, fabricate evidence, and/or suppress material exculpatory evidence in incident reports or any other document to be filed with the Sheriff's

department.

50.  In fact, Defendant WALKER, had the affirmative and self-evident duty to be truthful and accurate when filing an "Incident Report". In this particular instance, WALKER fabricated the facts in the incident report that PENNY  was the problem and "NOT" the Sergeant and deputies.  This was done in an effort to avoid liability for the actions of DOWDY and WALKER. WALKER, knew or should have known that by presenting a false incident report, would lead to the deprivation of Plaintiff's civil rights. The Defendants, like any reasonable person, knew or should have known that Plaintiff had a constitutionally protected right not to be lied about in an incident report. In so doing, WALKER, was acting under color of state law. He did these things without proper justification or authority in an effort to project and save both DOWDY and himself from liability.  Further, WALKER's actions were taken with deliberate indifference to Plaintiff's due process rights, and in conscious disregard of Plaintiff's right to not be lied about by government agents/employees. "A [constitutional] right can be clearly established by common sense only where "conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional" citing *DeBoer v. Pennington*, 206 F.3d 857, 864-65 (9th Cir. 2000), vacated on other grounds by *Bellingham v. DeBoer*, 532 U.S. 992 (2001).) See *James v. Rowlands*, 606 F.3d 646, 652 (9th Cir. 2010).)

**51. The fabrication of material facts in the "Incident Report". Some of the**

**material fabricated facts are as follows:**

a.  Penny- Appearance -  Dirty and Unkept;

b.  Penny- demeanor- Uncooperative;

c.  Isaiah- demeanor- polite- apologetic

d.  Penny was not bleeding from the head or knees until Penny was knocked down the second time.

e.  No citizen ran up to WALKER to cause WALKER to bear/ hug/ drag Penny;

f.  No criminal trespass warning was given nor was there public intoxication;

g.  Penny did not tell WALKER that the handcuffs were too tight and that PENNY stated she wanted to kill herself.

h.  Ms. Penny had a strong odor of alcoholic beverage on her breath and about her person in addition to slurred speech.

i.  I never observed Ms. Penny to loose consciousness during the incident.

It is obvious that both individual defendants used excessive force on PENNY for no apparent reason. DOWDY working a second job at a club could not control himself and WALKER decided to fabricate events to protect his fellow officer DOWDY.

52.  Plaintiff has also incurred, and will continue to incur, attorney's fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

## DAMAGES

53. As the direct and proximate result of the individual Defendants' wrongful conduct, including arrest without probable cause, excessive force and fabrication of an incident report, plaintiff was injured and damaged, as set forth herein.

54. As a direct and proximate result of Defendant officers' wrongful conduct, Plaintiff suffered the following injuries and damages:

a.      Violation of her constitutional rights under the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of her person;

b.      Loss of physical liberty;

c.      Physical injuries, pain and suffering, emotional trauma and suffering, and medical expenses;

d.      Violations of the following clearly established and well-settled federal constitutional rights which include (1) freedom from unreasonable search and seizure of their persons under the Fourth Amendment to the United States Constitution; and, (2) right to equal protection under the Fourteenth Amendment to the United States Constitution;

e.      The conduct of named Defendants' Sheriff deputies was malicious, wanton and oppressive.  Plaintiff is therefore entitled to an award of punitive damages against said defendant sheriff's deputies;

f.      Harris County is also responsible for the lack of policies and procedures by its Sheriff's Department when it allows its sergeants and deputies to work second jobs knowing they continually violate the constitutional rights of its citizens.

g.      Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law.   Plaintiff is therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of her civil rights.

## **PRAYER**

WHEREFORE, plaintiff prays for judgment against the Defendants, jointly and severally as follows:

1.      For general damages in the sum of $500,000.00;

2.      For special damages according to proof;

3.      For punitive damages against the individual named Defendant sheriff's deputies, according to proof;

4.      For reasonable attorney's fees pursuant to 42 U.S.C.  Sections 1983 and 1988;

5.      For costs of suit herein incurred; and

6.      For such other and further relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  March 18, 2018

s/ Edward A. Rose, Jr.

By Edward A. Rose, Jr. Attorney at Law

Edward A. Rose, Jr., Attorney at Law, PC

Attorney-in-Charge

State of Texas Bar No. 24081127

Southern District of Texas Bar No. 1645585

3027 Marina Bay Drive  Suite 208

League City, Texas 77573

Phone: 713-581-6029

Fax: 832-201-9960

edrose@edroseattorneycpa.com

Attorney for Plaintiff

COMPLAINT