IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PENNY JACOBSON-BOETTCHER, §
In her Individual Capacity, §
§
Plaintiffs, §
§
v. § CIVIL ACTION NO. H-18-0853
§
SERGEANT WILLIAM DOWDY, in His §
Individual Capacity, DEPUTY §
JACOB WALKER, in His Individual §
Capacity, HARRIS COUNTY, TEXAS, §
and DOES 1-10, Inclusive, §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Penny Jacobson-Boettcher, brings this action against defendants, Harris County, Texas, and Harris County Sheriff's employees, Sergeant William Dowdy ("Dowdy"), Deputy Jacob Walker ("Walker"), and Deputy Does 1-10, under 42 U.S.C. § 1983 for violation of civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Pending before the court are Harris County's Answer and Partial Motion to Dismiss (Docket Entry No. 5), and Defendants Harris County, Dowdy, and Walker's Motion to Dismiss ("Defendants' Motion to Dismiss")(Docket Entry No. 10). For the reasons set forth below, Harris County's Partial Motion to Dismiss will be granted, and Defendants' Motion to Dismiss will be granted in part and denied.

# I.  **Standard of Review**

Defendants Dowdy, Walker, and Harris County, seek dismissal of all the claims asserted against them under Federal Rule of Civil Procedure 12(b)(6).[1]  Rule 12(b)(6) motions test the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Id.</u>  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u>

---

[1]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 1. Defendants also cite Rule 91a of the Texas Rules of Civil Procedure, which allows state courts to do what a federal court is allowed to do under Rule 12(b)(6).  Rule 91a is not applicable to this action.

## II.  **Plaintiffs' Factual Allegations**

Plaintiff alleges that on Saturday, October 22, 2016, she and her husband, Isaiah, went to Mo's Place at about 7:30 p.m., ordered two drinks, found a table, and sat down.  Plaintiff and Isaiah remained at the same table most of the night because plaintiff had a foot condition that prevented her from walking, dancing, and standing for prolonged periods.  At about 1:00 A.M. on Sunday, October 23, 2016, plaintiff and Isaiah moved closer to the dance floor, and while doing so the plaintiff accidentally bumped into another patron.  Plaintiff tried to apologize for the bump, but the other patron complained to a staff member who told the plaintiff it was time to go.  When plaintiff questioned why, the staff member summoned an off-duty, uniformed Harris County Sheriff's Deputy, Deputy Mook, who told plaintiff and Isaiah to leave the premises. Plaintiff alleges that both she and Isaiah immediately complied. As plaintiff and Isaiah began to exit Mo's Place, Mo, Jr. brought the tab for Isaiah to sign, and plaintiff and Isaiah then proceeded to exit the building.

Plaintiff alleges that once outside, Isaiah asked the valet if plaintiff could wait with him while Isaiah went to get their truck. The valet agreed. Plaintiff stood near a valet pole, approximately 12 feet away from the front door of Mo's Place, waiting for Isaiah to return with their truck.  Plaintiff alleges that

> 17.  . . . Isaiah pulled up the truck and [PLAINTIFF]
> walked over to the truck.   DOWDY then yelled at

[PLAINTIFF] saying, "get in the truck or you're going to jail," to which [PLAINTIFF] responded, "but why, I didn't do anything wrong." DOWDY then stated "that's it, you're going to jail."

18.  DOWDY approached [PLAINTIFF] and instructed her to put her hands behind her back, which [plaintiff] complied. **DOWDY arrested [PLAINTIFF] in violation of her 4th amendment rights without probable cause.** When DOWDY applied the handcuffs, [PLAINTIFF] complained they were too tight and informed DOWDY that she had Rheumatoid Arthritis. . . DOWDY became angry, did not loosen the cuffs, but applied more pressure to her wrists by pushing downward on the cuffs. The valet parked the truck for Isaiah so Isaiah could stay with [PLAINTIFF].[2]

Plaintiff alleges that Dowdy called for a patrol unit, that due to the condition of her foot, plaintiff had to shift her weight from left to right, and that her movement angered Dowdy who responded by bending her over a trash can and ultimately knocking her down to the ground injuring her shoulder and causing her to briefly lose consciousness. Plaintiff alleges that she awoke to Dowdy and Deputy Walker telling her to get up, to which she responded, "I can't get up like this. . . I have Rheumatoid Arthritis and my feet are raw."[3] Dowdy then pulled plaintiff up by the handcuffs, stepping on her right foot and causing her shoe to come off. When plaintiff failed to walk toward the defendants' patrol unit as fast as Dowdy wanted, she was pushed to the ground hitting her head. Deputy Walker then pulled her up and dragged her to the patrol unit. By this time the plaintiff was screaming in

---

[2]Plaintiff's Complaint, Docket Entry No. 1, pp. 7-8, ¶¶ 17-18.
[3]Id. at 9 ¶ 20.

pain and bleeding from her head, knees, and feet. Once in the patrol unit plaintiff's pain caused her to vomit. Walker then pulled her out of the unit and asked Isaiah to console her, which he did.

Plaintiff alleges that while Dowdy and Walker were deciding what to charge her with, Sergeant Campbell arrived on the scene. She alleges that Dowdy or Walker told Campbell that she was going to jail, but Campbell said, "she's not going to jail; she's going to the hospital."[4] When asked if she wanted to go the hospital plaintiff said, "Yes," and was placed on a stretcher and into an ambulance.[5] Asserting that she "was never charged with any violation of any law,"[6] plaintiff alleges that

> WALKER in his incident report **"fabricated"** the sequence of events to avoid future liability for his actions and the actions of DOWDY. A true and correct copy of the "Incident Report" with intentional fabrications is attached at **Exhibit A** and incorporated by reference.[7]

---

[4]Id. at 10 ¶ 22.

[5]Id. at 11 ¶ 22.

[6]Id. at 11 ¶ 23.

[7]Id. at ¶ 24.

### III. **Harris County's Partial Motion to Dismiss**

Harris County's Partial Motion to Dismiss seeks dismissal of any claims that has asserted for conspiracy and violation of the Ninth Amendment.[8] Plaintiff responds that she "does not oppose Harris County's . . . Partial Motion to Dismiss as to any alleged allegations of conspiracy by Harris County and any 9th Amendment Claims."[9] Accordingly, Harris County's Partial Motion to Dismiss will be granted and the claims that plaintiff has asserted for conspiracy and for violation of the Ninth Amendment will be dismissed with prejudice.

### IV. **Defendants' Motion to Dismiss**

Citing 42 U.S.C. § 1983, plaintiff alleges that the Dowdy and Walker are liable for arresting her and using excessive force against her without probable cause in violation of the Fourth and Fourteenth Amendments, that Deputy Walker is liable for judicial deception and violation her Fourteenth Amendment right to substantive due process for filing a false Incident Report with the Harris County Sheriff's Office, and that Harris County is liable for failing to train and supervise the individual defendants. Harris County, Dowdy, and Walker seek dismissal of "the entire

---

[8]Harris County's Answer and Partial Motion to Dismiss, Docket Entry No. 11, pp. 7 and 8.

[9]No Opposition to Harris County's Answer and Partial Motion to Dismiss, Docket Entry No. 11, p. 1.

case,"[10] arguing that plaintiff has failed to allege facts capable showing that she suffered a deprivation of constitutional rights because probable cause existed to arrest her for criminal trespass. In addition defendants argue that plaintiff's claims for excessive use of force should be dismissed because the injuries of which she complains are minor injuries, incidental to a lawful arrest that do not give rise to excessive force claims, and that plaintiff's claim for judicial deception against Walker should be dismissed because no charges have been filed and no judicial deception has occurred.

## A.    Applicable Law

### 1.    42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Conner, 109 S. Ct.

---

[10]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 7.

1865, 1870 (1989) (quoting <u>Baker v. McCollan</u>, 99 S. Ct. 2689, 2694 n. 3 (1979)). To establish § 1983 liability, plaintiff must prove that she suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." <u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004). Plaintiff must also show that the constitutional deprivation she suffered was intentional or due to deliberate indifference and not the result of mere negligence. <u>Id.</u>

"The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." <u>Graham</u>, 109 S. Ct. at 1870. "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." <u>Id.</u> at 1871. Plaintiff's allegations that defendants' violating her rights to be free from false arrest and excessive use of force are claims that must be analyzed under the Fourth Amendment. <u>Id.</u> at 1871-73 (citing <u>Tennessee v. Garner</u>, 105 S. Ct. 1694, 1699-1707 (1985)).

### 2. <u>Official and Personal Liability</u>

Public officials like the individual defendants, Dowdy and Walker, may be sued pursuant to 42 U.S.C. § 1983 in either their official and/or their personal capacities. <u>Hafer v. Melo</u>, 112 S. Ct. 358, 361-63 (1991) (citing <u>Kentucky v. Graham</u>, 105 S. Ct. 3099 (1985)).

> [T]he distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." . . . State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. . . . By contrast, officers sued in their personal capacity come to court as individuals.

Id. at 362.  The real party in interest in an official-capacity suit is the governmental entity, not the named official.  Id. at 361 (citing Graham, 105 S. Ct. at 3105) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").  To state a personal-capacity claim under § 1983 plaintiffs must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that defendants' wrongful actions were causally connected to such a deprivation.  James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008).


### 3.    Qualified Immunity

Public officials sued in their personal capacities under § 1983 are shielded from suit by the doctrine of qualified immunity.  Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 812 (2009). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' . . . it is effectively lost if a case is erroneously permitted to go to trial."  Id.  The doctrine of qualified immunity was created to balance the interest of

compensating persons whose federally protected rights have been violated against the fear that personal liability might inhibit public officials in the discharge of their duties. See Johnston v. City of Houston, Texas, 14 F.3d 1056, 1059 (5th Cir. 1994). The qualified immunity analysis involves a two-step inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson, 129 S. Ct. at 815-16. It is within the discretion of the district court to decide which of the two steps to address first. Id. at 818. Courts examine each officer's actions independently to determine whether he or she is entitled to qualified immunity. Newman v. Guedry, 703 F.3d 757, 762 (5th Cir. 2012), cert. denied, 134 S. Ct. 162 (2013). Once a defendant asserts qualified immunity, the burden shifts to the plaintiff, who bears the burden of negating the defense of qualified immunity. Id. at 761.

**B.    Application of the Law to the Plaintiff's Allegations**

    1.   Plaintiff's Claims for Unreasonable Seizure Are Subject to Dismissal as to Walker But Not as to Dowdy

Dowdy and Walker argue that they are entitled to dismissal of plaintiff's claims for unreasonable seizure because probable cause existed to arrest her for criminal trespass and therefore, they are entitled to qualified immunity to these claims.[11]

---

[11]Defendants' Motion to Dismiss, Docket Entry No. 10, pp. 2-4.

(a) Applicable Law

Plaintiff's allegations that Dowdy and Walker unreasonably seized her raise claims for violation of the Fourth Amendment. The Fourth Amendment prohibits arrests made without probable cause. Blackwell v. Barton, 34 F.3d 298, 303 (5th Cir. 1994). The Fourth Amendment is made applicable to state defendants through the Fourteenth Amendment. Severance v. Patterson, 566 F.3d 490, 501 (5th Cir. 2009). The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 99 S. Ct. 2627, 2632 (1979)). This is an objective standard based on the facts known by the officer at the time of the arrest. Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009).

(b) Application of the Law to the Allegations

Defendants argue that "[p]laintiff's own complaint and attachments show the officers had probable cause to arrest her. The staff told her to leave. Another deputy told her to leave. Sgt. Dowdy told her to leave."[12] Citing Texas Penal Code

_____

[12]Id. at 3. See also id. at 6 ("In addition to her own factual basis in her complaint, [plaintiff] attaches the report of that (continued...)

-11-

§ 30.05(a), and the Memorandum and Order in <u>Bradshaw v. Katrib</u>, No. 4:16-cv-170, in which Judge Werlein granted summary judgment to a sheriff's deputy who, like Dowdy and Walker, was sued for arresting a patron for criminal trespass while working a second job. Defendants argue that

> it is uncontroverted that [p]laintiff was told to leave by staff, by law enforcement, and then banned by the owner's son. As Judge Werlein noted in his <u>Bradshaw</u> opinion, "[i]t is irrelevant whether [the officer] was belligerent or unjustified in issuing to [p]laintiff the ban and the warning." Memorandum at *15. The probable cause standard looks to the facts of which the officer was aware. . . Plaintiff does not contradict that she was asked to leave several times, and she attached to her complaint the report that shows she and her husband are permanently banned from Mo's. Plaintiff's 4th and 14th Amendment claims fail as a matter of law, and should be dismissed.[13]

Plaintiff argues that her claims for unreasonable seizure are not subject to dismissal because she has alleged that "Dowdy . . . arrested [her] <u>without any probable cause</u> whatsoever as she was waiting to get into the vehicle to leave the premises."[14] Asserting that she has alleged that she "left when asked and never returned to Mo's Place,"[15] plaintiff argues that her allegations are capable of showing that she

---

[12](...continued)
night that shows the officers had probable cause. Therefore based on her own complaint and her own attachments, the motion to dismiss should be granted.").

[13]Defendants' MSJ, Docket Entry No. 10, p. 4.

[14]Opposition to Defendants' Motion to Dismiss, Docket Entry No. 13, p. 3 ¶ 6 (emphasis in original).

[15]<u>Id.</u> at 7.

was not trespassing as she was waiting for her husband to pick her up at the entrance to Mo's Place as he was getting the family truck. It is quite obvious that Defendant Dowdy's unconstitutional actions occurred while Plaintiff was waiting for her husband to bring the truck to the entrance.[16]

Plaintiff argues that Dowdy arrested her for simply saying "she did nothing wrong,"[17] and that defendants misstate the allegations by by arguing that she failed to leave when the alleged facts are that she inquired what she did wrong "while she was leaving."[18] Plaintiff argues that Judge Werlein's Memorandum Opinion and Order in <u>Bradshaw</u> is inapposite because "[t]he facts of this case are substantially different."[19] Plaintiff argues the <u>Bradshaw</u> plaintiff

> was **initially** given a criminal trespass warning and **subsequently returned** a few months later. Because of his returning after previously [having been] given a criminal trespass warning, the officer involved was granted qualified immunity.[20]

Moreover, plaintiff disputes defendants' contention that the owner's son banned her from returning to Mo's Place.[21]

The Texas criminal trespass statute, Texas Penal Code § 30.05, states in pertinent part that "(a) A person commits an offense if the person enters or remains on or in property of another . . . without effective consent and the person: . . . (2) received notice

---

[16]<u>Id.</u>

[17]<u>Id.</u>

[18]<u>Id.</u> at 8.

[19]<u>Id.</u>

[20]<u>Id.</u>

[21]<u>Id.</u>

to depart but failed to do so." "Notice" is defined to include an oral communication "by the owner or someone with apparent authority to act for the owner." Id. § 30.05(b)(2). "An offense under this section is: (1) a Class B misdemeanor . . ." Id. § 30.05(d). Defendants argue that probable cause to arrest plaintiff existed because when Dowdy told plaintiff to get into her truck, "or you're going to jail" . . . [p]laintiff continued to argue with [him] by her own admission."[22] While plaintiff alleges that she responded to Dowdy's directive to get into her truck by asking why, and that she protested she hadn't done anything wrong, plaintiff does not allege — and defendants do not argue — that plaintiff ever refused to leave the premises, or that plaintiff was not in the process of complying with the directive to leave the premises when Dowdy arrested her. Nor have defendants cited any authority holding that questioning a directive to leave while, in fact, leaving constitutes an offense. The Bradshaw case cited by defendants is inapposite not only for the reasons argued by plaintiff, but also because it involved a motion for summary judgment, not a motion to dismiss. Defendants' motion to dismiss plaintiff's claim for unreasonable seizure against Dowdy will therefore be denied. Since plaintiff fails to allege any facts capable of showing that Walker participated in her arrest, defendant's motion to dismiss plaintiff's unreasonable seizure claim against Walker will be granted.

---

[22]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 2.

2.   Plaintiff's Claims for Excessive Use of Force Against
     Dowdy and Walker Are Not Subject to Dismissal

Plaintiff alleges that Dowdy and Walker violated the Fourth
and Fourteenth Amendments by using excessive force against her.[23]
Defendants argue that these claims are subject to dismissal
because "minor, incidental injuries that occur in connection with
the use of handcuffs to effectuate an arrest **do not give rise to
a constitutional claim for excessive force.**"[24]


          (a)  Applicable Law

To establish a claim for use of excessive force under the
Fourth and Fourteenth Amendments, plaintiff must allege facts
capable of showing that she suffered a seizure, and that she also
suffered (1) an injury; (2) which resulted directly and only from
a use of force that was clearly excessive to the need; and (3) the
excessiveness of the force was objectively unreasonable.  See
Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004)
(citing Graham, 109 S. Ct. at 1871).  "[T]he question [is] whether
the totality of the circumstances justified" that use of force.
Tennessee v. Garner, 105 S. Ct. 1694, 1700 (1985).  In Graham, 109
S. Ct. at 1865, the Supreme Court articulated three considerations
for courts to use when determining if a particular use of force was

---

[23]Complaint, Docket Entry No. 1,  p. 12.

[24]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 4.

reasonable under the circumstances or excessive to the need. These considerations — often referred to as the Graham factors — are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene. Id. at 1872.

### (b) Application of the Law to the Allegations

Defendants argue that plaintiff's excessive force claims are subject to dismissal because

> [t]he official report that [p]laintiff attaches to her own complaint shows she was intoxicated, fell, refused to get up and then vomited in the officer's car. Her injuries are her own fault. She alternately told the officers to shoot her and arrest her. She refused medical treatment but for the intervention of her husband. While [p]laintiff clearly disputes this rendition, it is attached to the complaint, and the court can consider it.[25]

Asserting that they are entitled to qualified immunity from plaintiff's excessive force claims, and citing Ramirez v. Martinez, 716 F.3d 369, 375 (5th Cir. 2013), defendants argue that

> [p]laintiff must show that Walker and Dowdy DID NOT have probable cause at the time [p]laintiff was handcuffed and placed in the sheriff's car, where she vomited. In fact, Walker and Dowdy had clear knowledge of facts and circumstances sufficient to conclude that [p]laintiff had committed an offense — trespassing. . .
>
> In addition to her own factual basis in her complaint, she attaches the report of that night that

---

[25]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 5.

shows the officers had probable cause.  Therefore, based
on her own complaint and her own attachments, the motion
to dismiss should be granted.  Because [d]efendants had
probable cause, as her own complaint shows, they did not
violate her rights.  The case should be dismissed with
prejudice.[26]

Plaintiff argues that the report was created by Walker in an
attempt "'to cover' up the actions of Defendant Dowdy. . . [and]
has challenged numerous statements made in the incident report as
untrue."[27]

With respect to the severity of her injuries, plaintiff argues
that "[d]efendants attempt to convince this court that the injuries
sustained by the [p]laintiff were 'minor and incidental' when they
are 'substantial injuries.'"[28]  Although a showing of significant
physical injury is not required in the context of an excessive
force claim, the Fifth Circuit does require plaintiffs asserting
such claims to have suffered "more than a de minimis injury."
Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001). The
extent of the injury "must be evaluated in the context in which the
force was deployed."  Id. (citing Williams v. Bramer, 180 F.3d 699,
703 (5th Cir. 1999)).

Plaintiff alleges that as a result of Dowdy's and Walker's
actions,

---

[26]Id. at 6.

[27]Id. at 8.

[28]Id.

> [she] suffered bruises, a black eye, recurring headaches,
> lacerations (permanent scar above right eye and right
> wrist), abrasions, nerve "crush" injury on right wrist,
> neck pain, memory loss, arm stiffness, tendonitis, scabs,
> inflammation in joints, pustular psoriasis flare,
> rheumatoid arthritis flare, fibromyalgia flare,
> nightmares, PTSD, stress, fear, emotional damage,
> depression and insomnia.[29]

Whether these injuries are sufficient to support claims for excessive use of force also turns on whether the use of force that caused these injuries was clearly excessive to the need and objectively unreasonable. Because plaintiff also alleges that the force about which she complains occurred after she had already been arrested and handcuffed, that she was arrested for criminal trespass, a non-violent Class B misdemeanor, and because the alleged facts do not suggest that plaintiff posed a threat to herself, the defendants, or others, or that she resisted the arresting officers or attempting to flee, if plaintiff suffered these injuries, and if, as she alleges, she was arrested without probable cause, her alleged injuries could plausibly support claims for excessive use of force. Accordingly, defendants' motion to dismiss the excessive use of force claims assert against Dowdy and Walker will be denied.

---

[29]Id. at 11 ¶ 23.

3.   Plaintiff's Claim for Judicial Deception Against Walker
     Is Subject to Dismissal

Plaintiff alleges that Walker violated her right to
substantive due process guaranteed by the Fourteenth Amendment by
fabricating facts in the Incident Report submitted to the Sheriff's
Department in an effort to avoid liability for himself and Dowdy.[30]
Plaintiff alleges that

> WALKER, knew or should have known that by presenting a
> false incident report, would lead to the deprivation of
> [p]laintiff's civil rights.  The [d]efendants, like any
> reasonable person, knew or should have known that
> [p]laintiff had a constitutionally protected right not to
> be lied about in an incident report.[31]

Defendants argue that this claim should be dismissed because
"[p]laintiff was not ultimately indicted," "no charges were filed,"
and "[t]here is no judicial deception,"[32] and because "[t]he
officers had probable cause based on her own complaint.  Her own
complaint shows there is no judicial deception and no
constitutional violation."[33]

Individuals have a due process right "not to have police
deliberately fabricate evidence and use it to frame and bring false
charges against [them]."  Cole v. Carson, 802 F.3d 752, 771 (5th
Cir. 2015).  Claims for judicial deception under § 1983 are

---

[30]Plaintiff's Complaint, Docket Entry No. 1, pp. 18-20.

[31]Id. at 19 ¶ 50.

[32]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 6.

[33]Id. at 7.

-19-

typically used to challenge the validity of a warrant or other judicially issued instrument based on allegations that law enforcement agents submitted a false affidavit or report to the issuing judicial officer. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). To establish a judicial deception claim plaintiffs must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 98 S. Ct. 2674, 2675-77 (1978). Under Franks and its progeny the plaintiff must prove (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause to issue a warrant. Franks, 98 S. Ct. at 2684-85.

Plaintiff alleges that Walker lied in the Incident Report that he prepared and filed with the Harris County Sheriff's Department.[34] However, since plaintiff alleges that she was arrested without a warrant, that she has not been charged, and that the Incident Report was falsified to justify Dowdy's and Walker's unreasonable seizure and use of excessive force against her, plaintiff's judicial deception claim is subject to dismissal because plaintiff fails to allege any judicial deception and has therefore failed to state a claim for judicial deception. Alternatively, the court concludes that plaintiff's claim for judicial deception is subject

---

[34]Plaintiff's Complaint, Docket Entry No. 1, pp. 18-20.

to dismissal because it duplicates her claims for unreasonable seizure and excessive use of force. See Cambridge Toxicology Group v. Exnicios, 495 F.3d 169, 178 (5th Cir. 2007) (recognizing that district courts have discretion to dismiss duplicative claims). Accordingly, defendants' motion to dismiss plaintiff's claim for judicial deception will be granted.

### 4. Plaintiff's Claim Against Harris County is Not Subject to Dismissal

Plaintiff alleges that Harris County is liable under 42 U.S.C. § 1983 for failing to train and supervise the individual defendants. In Monell v. Department of Social Services of the City of New York, 98 S. Ct. 2018, 2022, 2035-36 (1978), the Supreme Court held that municipalities are "persons" subject to suit under 42 U.S.C. § 1983, but that municipalities cannot he held liable on a respondeat superior basis, i.e., a municipality cannot be held liable simply because one of its employees violated a person's federal rights. For a municipality to be held liable under § 1983, the municipality itself must cause the violation through its policies. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 2037-38. Plaintiff alleges that

> Harris County, Texas has no policies in force to ensure
> its officers do not violate the constitutional rights of
> individuals when they are working a 2nd job in uniform
> and under color of state law. A true and correct copy of
> their policies and procedures are attached [as] Exhibit
> B and incorporated by reference as though fully pled
> herein. There have been numerous instances where rights
> have been violated by deputies of the Sheriff's
> Department.[35]

Defendants argue that plaintiff's claims against Harris County should be dismissed because "the officers had probable cause."[36] For the reasons stated in § IV.B.1, above, the court has already concluded that plaintiff has alleged facts capable of establishing that the defendant officers did not have probable cause to arrest her for criminal trespass. Accordingly, defendants' motion to dismiss plaintiff's claims against Harris County will be denied.

## V. **Conclusions and Order**

For the reasons explained in § III, above, Harris County's Partial Motion to Dismiss, Docket Entry No. 5, is **GRANTED**.

For the reasons explained in § IV.B.1, above, the defendants' motion to dismiss plaintiff's claims for unreasonable seizure is **GRANTED** as to Deputy Walker and **DENIED** as to Sergeant Dowdy.

For the reasons explained in § IV.B.2, above, the defendants' motion to dismiss plaintiff's claims for excessive use of force is **DENIED**.

---

[35]Plaintiff's Complaint, Docket Entry No. 1, p. 14 ¶ 33.

[36]Defendants' Motion to Dismiss, Docket Entry No. 10, p. 7.

-22-

For the reasons explained in § IV.B.3, above, the defendants' motion to dismiss plaintiff's claim for judicial deception asserted against Deputy Walker is **GRANTED**.

For the reasons explained in § IV.B.4, above, the defendants' motion to dismiss the claims asserted against Harris County, Texas, is **DENIED**.

Accordingly, Defendants Harris County, Dowdy, and Walker's Motion to Dismiss, Docket Entry No. 10, is **GRANTED IN PART** and **DENIED IN PART**.

**SIGNED** at Houston, Texas, on this the 20th day of July, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE